IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

| | |
|---|---|
| **BURNS & McDONNELL ENGINEERING COMPANY, INC.,** ) ) ) | |
| Plaintiff, ) | |
| v. ) | No. 1:16-cv-01100-STA-egb |
| ) | |
| **NDE GLOBAL TECHNICAL SERVICES GmbH and NDE TECHNICAL SERVICES USA, INC.,** ) ) ) ) ) | |
| Defendants. ) | |

**ORDER DENYING DEFENDANT'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**

Before the Court is Defendant NDE Global Technical Services GmbH's Motion to Dismiss for Lack of Personal Jurisdiction (ECF No. 20) filed on August 20, 2016. Plaintiff Burns & McDonnell Engineering Company, Inc. has filed a response in opposition, to which Defendant has replied. On March 23, 2017, this case was transferred to the undersigned for all further proceedings. For the reasons set forth below, Defendants' Motion to Dismiss is **DENIED**.

**BACKGROUND**

This is a breach of contact action in which the Court has subject matter jurisdiction 28 U.S.C. § 1332(a) based on the parties' diversity of citizenship and the amount in controversy. Plaintiff Burns & McDonnell Engineering Company, Inc. ("Burns & McDonnell") is a Missouri corporation with its principal place of business in Kansas City, Missouri. Defendant NDE

1

Global Technical Services GmbH ("NDE Global") is a German corporation with its principal place of business in Monchengladbach, Germany. The Complaint alleges Burns & McDonnell entered into a master services agreement with NDE Global on October 7, 2010. As part of the master services agreement, NDE Global and its subsidiaries agreed to provide Burns & McDonnell with certain technical services, including supplier source inspections and supplier audits and surveys. The master services agreement and its exhibits are attached to the Complaint and constitute part of the pleadings for purposes of the Motion to Dismiss.

According to the Complaint, Burns & McDonnell subsequently entered into an underlying contract with a third party for the fabrication and supply of certain pipe materials. The third party performed the fabrication at a shop in Brownsville, Tennessee, which is located in the Western District of Tennessee. Burns & McDonnell entered into a purchase order with NDE Technical Services USA, Inc. ("NDE USA") on February 2, 2015, wherein NDE USA agreed to inspect and monitor the work of the third-party for the piping fabrication in accordance with a scope of work Burns & McDonnell had provided to NDE USA in December 2014. The Complaint alleges that the master services agreement and the purchase order collectively constitute the contract between the parties.

NDE[1] inspected and approved the third-party's pipe fabrication work. But upon delivery of the pipe to the jobsite in Oklahoma, Burns & McDonnell discovered a number of defects in the pipe welding. Pursuant to the indemnity provision of the master services agreement, Burns & McDonnell now seeks indemnification from NDE Global and NDE USA for the delays and remedial costs resulting from the defective pipe. Based on these fact pleadings, the Complaint

---

[1] The Complaint refers to NDE Global and NDE USA collectively as "NDE."

alleges claims for breach of contract, negligence, and negligent misrepresentation.

In its Motion to Dismiss, NDE Global argues that the Court lacks personal jurisdiction over it. The Complaint fails to allege that NDE Global purposely availed itself of the benefits of conducting business in Tennessee and targeted Tennessee with its business activities. NDE Global has attached to its Motion a declaration from Angela Jackson, its regional director. According to Jackson's declaration, NDE Global is itself a subsidiary of other subsidiary companies of EDIF Group Limited, a UK company. NDE USA is in turn a subsidiary of NDE Global. NDE Global has no property, no offices, and no contacts with the United States, much less the state of Tennessee. NDE Global has never been a plaintiff or defendant to any litigation in the United States.

NDE Global acknowledges that it is a party to the master services agreement with Burns & McDonnell. But NDE Global explains that it signed the agreement as the parent company of its various international subsidiaries. The agreement contemplated work in a number of countries including the United States, Ireland, Germany, and Switzerland. The parties to the master services agreement intended for NDE Global's American subsidiary, NDE USA, to perform all contract work in the United States, including the work described in the 2015 purchase order for inspection services. NDE USA retained the services of an inspector from Tennessee to carry out the work. NDE Global had no involvement with the work and no contact with the third-party fabricator or the inspector retained by NDE USA. NDE Global did not control any of the work performed at the third-party fabrication facility in Brownsville, Tennessee, and NDE Global received none of the compensation for the work performed under the contract. Based on these facts, NDE Global argues that personal jurisdiction, either general

or specific, is lacking.

Burns & McDonnell has responded in opposition. As a procedural matter, Burns & McDonnell points out that NDE Global has not requested an evidentiary hearing or the opportunity to conduct jurisdictional discovery. The burden on Burns & McDonnell to establish the Court's personal jurisdiction over NDE Global then is slight. Burns & McDonnell contends it has carried this burden. While acknowledging that general personal jurisdiction is lacking, Burns & McDonnell argues that the Court has specific personal jurisdiction over NDE Global.

The facts before the Court show that Burns & McDonnell and NDE Global entered into a master services agreement. The master services agreement provided that Burns & McDonnell would issue purchase orders for specific projects throughout the United States and that it would perform under the contracts through its subsidiaries. Where a purchase order incorporated the master services agreement by reference, the master services agreement became the base document for the purchase order. According to Burns & McDonnell, NDE Global and NDE USA contracted through a specific purchase order in February 2015 for the fabrication inspection services to be performed in the Brownsville, Tennessee. While NDE USA is not listed as a subsidiary in the master services agreement itself, Burns & McDonnell understood from NDE USA's representations that NDE USA was NDE Global's agent to perform the February 2015 purchase order in Tennessee. In short, NDE Global availed itself of doing business and performing its contractual obligations in Tennessee. Burns & McDonnell argues then that all of the *Southern Machine* factors weigh in favor of the Court exercising specific personal jurisdiction over NDE Global.

NDE Global has filed a reply. NDE Global answers that Plaintiff has offered only conclusory claims about NDE Global's contractual duties and has therefore not carried its burden

4

to establish the Court's personal jurisdiction. NDE Global argues that the master services agreement did not specifically require any further action by the parties. The agreement only says that Burns & McDonnell "could" issue future assignments to certain NDE Global subsidiaries. NDE USA was not one of the subsidiaries listed in the initial master services agreement in 2010 and was added through an amendment to the agreement in 2013 to reflect the fact that NDE Quality Systems, Inc. had changed its name to NDE Technical Services USA, Inc., the party referred to here as NDE USA. NDE USA, and not NDE Global, was a party to the purchase order issued by Burns & McDonnell in 2015 for the pipe fabrication work performed in Tennessee. NDE Global maintains that the master services agreement does not show that it purposely availed itself of the opportunity to conduct business in Tennessee. And it is not enough to show that NDE Global is the parent company of NDE USA. Burns & McDonnell has not shown that NDE Global performed the work in Tennessee through NDE USA or that NDE USA is the alter ego of NDE Global. Therefore, the Court should hold that it does not have specific personal jurisdiction over NDE Global.

## **STANDARD OF REVIEW**

When a party challenges personal jurisdiction pursuant to Rule 12(b)(2), the plaintiff bears the burden of establishing the existence of jurisdiction. *Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430, 449 (6th Cir. 2012); *Serras v. First Tenn. Bank Nat'l Ass'n*, 875 F.2d 1212, 1214 (6th Cir. 1989). A plaintiff may not stand on his pleadings but must, by affidavit or otherwise, set forth specific facts showing that the Court has jurisdiction. *Carrier Corp.*, 673 F.3d at 449 (citing *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991)). In considering a properly-supported Rule 12(b)(2) motion, the Court may proceed in three ways: "it may decide the motion

5

upon the affidavits alone; it may permit discovery in aid of deciding the motion; or it may conduct an evidentiary hearing to resolve any apparent factual questions." *Intera Corp. v. Henderson*, 428 F.3d 605, 614 n.7 (6th Cir. 2005). In the event the district court reaches the jurisdictional issue on the basis of affidavits alone, the burden on the plaintiff is "relatively slight." *Am. Greetings Corp. v. Cohn*, 839 F.2d 1164, 1169 (6th Cir. 1988); *Data Disc, Inc. v. Sys. Tech. Assoc., Inc.*, 557 F.2d 1280 (6th Cir. 1977) ("If the court determines that it will receive only affidavits or affidavits plus discovery materials, these very limitations dictate that a plaintiff must make only a prima facie showing of jurisdictional facts through the submitted materials in order to avoid a defendant's motion to dismiss.").

"[T]he plaintiff must make only a *prima facie* showing that personal jurisdiction exists in order to defeat dismissal." *Cohn*, 839 F.2d at 1169. This means that the plaintiff must set forth specific facts to support a finding of jurisdiction by a preponderance of the evidence. *Conn v. Zakharov*, 667 F.3d 705, 711 (6th Cir. 2012) (citing *Kroger Co. v. Malease Foods Corp.*, 437 F.3d 506, 510 & n.3 (6th Cir. 2006)). The pleadings and affidavits submitted must be viewed in a light most favorable to the plaintiff, and the district court should not "consider facts proffered by the defendant that conflict with those offered by the plaintiff." *PT Pukuafu Indah v. U.S. Sec. & Exch. Comm'n*, 661 F.3d 914, 920 (6th Cir. 2011). "Dismissal is proper only if [the plaintiff's] alleged facts collectively fail to state a *prima facie* case for jurisdiction." *Carrier Corp.*, 673 F.3d at 449 (quoting *Theunissen*, 935 F.2d at 1459) (internal quotation marks omitted).

## **ANALYSIS**

The issue presented is whether the Court has specific personal jurisdiction over NDE

Global. Personal jurisdiction over a nonresident defendant arises from "certain minimum contacts with [the forum] such that maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). In a diversity case, the plaintiff must satisfy two showings that personal jurisdiction exists as to a nonresident defendant: (1) the defendant is amenable to suit under the forum state's long-arm statute; and (2) due process requirements of the Constitution are met. *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1262 (6th Cir. 1996). Therefore, the Court may only exercise personal jurisdiction over a non-resident defendant if jurisdiction meets the state's long-arm statute and constitutional due process requirements. *Id.*

First, the law of the forum state determines "whether personal jurisdiction exists, subject to constitutional limitations." *Calphalon Corp. v. Rowlette*, 228 F.3d 718, 721 (6th Cir. 2000). In this case, the Tennessee long-arm statute sets forth the circumstances where an action or claim for relief might arise from a nonresident defendant's conduct within the state. Such conduct is defined as "the transaction of any business within the state; any tortious act or omission within this state; the ownership or possession of any interest in property located within this state; or entering into a contract for services to be rendered or for materials to be furnished in this state." *Id.* (citing Tenn. Code Ann. § 20–2–214(a)(1), (2), (3), & (5)). Tennessee's long-arm statute is interpreted to be "coterminous with the limits on personal jurisdiction imposed" by the Due Process Clause of the United States Constitution. *Id.* (citing *Payne v. Motorists' Mut. Ins. Cos.*, 4 F.3d 452, 455 (6th Cir. 1993)). Consequently, "the jurisdictional limits of Tennessee law and of federal constitutional law of due process are identical." *Id.*

"Depending on the type of minimum contacts in a case, personal jurisdiction can either

7

be specific or general." *Air Prods. & Controls, Inc. v. Safetech Intern., Inc.*, 503 F.3d 544, 549–50 (6th Cir. 2007) (citing *Reynolds v. Int'l Amateur Athletic Fed'n*, 23 F.3d 1110, 1116 (6th Cir. 1994)). The parties agree in this case that the Court does not have general personal jurisdiction over NDE Global. "An exercise of specific jurisdiction is proper where the claims in the case arise from or are related to the defendant's contacts with the forum state." *Henderson*, 428 F.3d at 615 (citing *Kerry Steel, Inc. v. Paragon Indus., Inc.*, 106 F.3d 147, 149 (6th Cir. 1997)). The Sixth Circuit applies a three-prong test in order to determine whether specific jurisdiction exists and to protect the due process rights of a non-resident defendant:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.
>
> *S. Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968).

Viewing the affidavits and the record evidence at the pleadings stage in a light most favorable to Burns and McDonnell, the Court holds that it has specific personal jurisdiction over NDE Global. Burns and McDonnell has made a prima facie showing that NDE Global purposefully availed itself of the privilege of doing business in the state of Tennessee. The "purposeful availment" prong of the *Southern Machine* test is an "essential" prerequisite for a court to exercise specific jurisdiction over a non-resident party. *Means v. U.S. Conf. of Catholic Bishops*, 836 F.3d 643, 649 (6th Cir. 2016); *Southern Machine*, 401 F.2d 381–82 (describing the purposeful availment prong as a "*sine qua non*" of specific personal jurisdiction). In any case, "the defendant's conduct and connection with the forum" must be "such that he 'should

reasonably anticipate being haled into court there.'" *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 889 (6th Cir. 2002) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985)). "[R]andom, fortuitous, or attenuated contacts" with the forum state will not do. *Walden v. Fiore*, 134 S.Ct. 1115, 1123 (2014). "In the Sixth Circuit, the emphasis in the purposeful availment inquiry is whether the defendant has engaged in some overt actions connecting the defendant with the forum state." *Beydoun v. Wataniya Restaurants Holding, Q.S.C.*, 768 F.3d 499, 506 (6th Cir. 2014) (citing *Fortis Corporate Ins. v. Viken Ship Mgmt.*, 450 F.3d 214, 218 (6th Cir. 2006)).

Burns & McDonnell alleges that the Court has specific personal jurisdiction over NDE Global by virtue of the parties' master services agreement and the 2015 purchase order. Where a party seeks to prove personal jurisdiction based on a contract, "the mere existence of a contract" between a resident of the forum state and a non-resident defendant, much less between two non-resident parties, is insufficient to confer personal jurisdiction over the non-resident. *Calphalon*, 228 F.3d at 722. Instead, the Court focuses its analysis on the "prior negotiations and contemplated future consequences, along with the terms of the contract and parties' actual course of dealing" to determine whether "the defendant purposefully established minimum contacts within the forum." *Rudzewicz*, 471 U.S. at 479.

Burns & McDonnell has shown that by entering into the master services agreement, NDE Global agreed to indemnify Burns & McDonnell for the negligence of NDE USA and therefore should have reasonably anticipated being haled into court in the state of Tennessee. The Court focuses its analysis on the terms of the parties' contract and the contemplated future consequences of their agreement. *Rudzewicz*, 471 U.S. at 479. NDE Global entered into the

9

2010 master services agreement with Burns & McDonnell for the purpose of "describ[ing] a business relationship" between Burns & McDonnell and NDE Global and its subsidiaries "for the procurement of professional technical services" listed in an exhibit to the master services agreement. Master Servs. Agr. § 1. The master services agreement referred to NDE Global and certain of its "subsidiaries, affiliates, and agents" listed in an exhibit to the agreement collectively as "the CONSULTANT." Although NDE Global asserts that its subsidiaries actually provided the technical services, the agreement is clear that "the CONSULTANT" agreed to perform the professional services. Master Servs. Agr. § 7.

Perhaps more importantly, NDE Global agreed in the master services agreement to indemnify Burns & McDonnell against any claims of negligence. The master services agreement contained the following indemnification clause: "CONSULTANT shall defend, indemnify and hold harmless [Burns and McDonnell] and OWNER and their agents and employees from and against any claims, suits, liabilities, costs and expenses, including reasonable attorneys' fees, to the extent that they are based upon claims of negligent acts, errors or omissions of CONSULTANT or any of its employees or agents." Prof. Tech. Servs. General Terms and Conditions, ex. A to Master Serv. Agr. (ECF No. 1-1, Page ID 19).

"The CONSULTANT" would subsequently enter into purchase orders for specific projects where "the CONSULTANT" would perform on-site inspection and supervision. As NDE Global admits in its brief, the parties understood that projects would be located in the United States, among other countries. Upon the acceptance of a purchase order by "the CONSULTANT," the parties agreed that the purchase order would incorporate the master services agreement by reference as the "base document" for the parties' dealings. In other

words, the purchase order together with the master services agreement became the contract between Burns & McDonnell on one side and NDE Global and its "subsidiaries, affiliates, and agents" on the other.

This is precisely what occurred in this case. The February 2015 purchase order specifically incorporated the terms of the master services agreement between Burns & McDonnell and NDE Global, and NDE USA performed under the February 2015 purchase order in the state of Tennessee. The purchase order was dated February 2, 2015, and listed NDE Technical Services USA, Inc. as the supplier for "supplier inspection services." A representative of NDE USA signed the purchase order. Burns & McDonnell alleges that in negotiating the purchase order, NDE USA held itself out as a party authorized to act on behalf of NDE Global pursuant to the master services agreement. While it is true that the purchase order does not state that NDE USA would provide the "supplier inspection services" in Tennessee, the parties do not actually dispute that the allegedly negligent inspections occurred in Tennessee in accordance with a scope of work Burns & McDonnell had previously shared with NDE. By incorporating the master services agreement, the February 2015 purchase order incorporated the indemnification clause and NDE Global's duty to hold Burns & McDonnell harmless for any negligent acts of "the CONSULTANT."

Construing the master services agreement and the February 2015 purchase order together as a single contractual agreement, Burns & McDonnell has made a prima facie showing that NDE Global obligated itself to indemnify Burns & McDonnell for liabilities resulting from the negligent performance of NDE USA in the state of Tennessee. NDE Global and its subsidiaries agreed in the master services agreement to provide technical services to Burns & McDonnell and

11

indemnify Burns & McDonnell for the negligent performance of those services. The parties' master services agreement described itself as a "base document" and simply provided a detailed framework for the future negotiation of project-specific purchase orders between the parties like the February 2015 purchase order in Tennessee. The parties also agreed that future purchase orders like the February 2015 purchase order would incorporate the terms of the master services agreement, including NDE Global's duty to indemnify Burns & McDonnell for the acts of tis subsidiaries. NDE USA's February 2015 purchase order with Burns & McDonnell and its agreement to perform the project in the state of Tennessee was entirely foreseeable to NDE Global. The master services agreement contemplated purchase orders to be performed anywhere in the United States. Burns & McDonnell now alleges that NDE Global is liable for indemnification pursuant to the master services agreement. The Court concludes that by entering into the master services agreement and pledging to indemnify Burns & McDonnell for the negligence of its subsidiary, NDE Global has engaged in sufficient conduct to connect itself to the state of Tennessee.

NDE Global emphasizes the fact that it merely signed the master services agreement on behalf of multiple subsidiaries and denies that it had any role in carrying out any technical services in Tennessee or otherwise performing under the February 2015 purchase order. It is true that there is no allegation that NDE Global controlled any of the on-site work in Tennessee. NDE Global agreed to indemnify Burns & McDonnell for the negligent work of its subsidiaries and had reason to know that it might be liable as an indemnitor for work performed by NDE USA in Tennessee. NDE Global had an ongoing role in the negotiation of project-specific purchase orders like the one in Tennessee. The master services agreement nominated a contact

12

person to act on each party's behalf: Burns & McDonnell would act through its supplier quality manager, NDE Global and its subsidiaries through a master services agreement manager. The agreement stated that the master services agreement manager "shall be the single point of contact for all inquiries for assistance, technical support, pricing and quotes for the CONSULTANT." Implementation Process, ex. B. to Master Servs. Agr. ¶ 2 (ECF No. 1-1, Page ID 21). The master services agreement did not identify the master services agreement manager by name, but the agreement names NDE Global's global business development manager as the contact person for "the CONSULTANT."[2] This tends to show that NDE Global continued to act as the intermediary between Burns & McDonnell and the NDE subsidiaries performing the field work.

Furthermore, the parties contemplated that the master services agreement manager would actively negotiate project-specific purchase orders. As part of the master services agreement's implementation process for negotiating purchase orders, Burns & McDonnell's supplier quality manager was to communicate with the master services agreement manager who had the duty (1) to identify for Burns & McDonnell's supplier quality manager the project manager assigned to a specific project and (2) to familiarize the project manager with the terms and conditions of the parties' master services agreement. Implementation Process ¶ 7. Burns & McDonnell's supplier

---

[2] The master services agreement does not specify that the global business development manager, Thomas Tinn, was an employee of NDE Global. The agreement does indicate that the manager's email domain was "ndeglobal.com" and that his office was in Houston, Texas. It is also true that other evidence in the record suggests Tinn was an employee of NDE USA. Exhibit F to the master services agreement contained a list of NDE Global "subsidiaries, affiliates, and agents," including NDE Quality Systems, Inc., the party referred to herein as NDE USA, and listed "Thomas Tinn – Global Business Development" as a contact person at NDE USA. This issue presents a question of fact that the Court need not reach to decide the issue of personal jurisdiction where the parties rely only the pleadings. Viewing the contract in a light most favorable to Burns & McDonnell, the master services agreement manager was an employee of NDE Global, and the parties agreed that NDE Global's global business development manager

quality manager would then negotiate the terms of the purchase order for a specific project either with the master services agreement manager or with the project manager working on the project. *Id.* Likewise, either the master services agreement manager or the project manager could sign the purchase order on behalf of "the CONSULTANT." *Id.* Discovery may ultimately show that NDE Global had no actual role in negotiating the February 2015 purchase order. But viewing the pleadings and the record as a whole most favorably to Burns & McDonnell, the Court concludes that NDE Global had a contractually-defined role in the negotiation of the purchase orders, including the February 2015 purchase order to be performed in Tennessee.

NDE Global also argues that it did not receive compensation for the work performed under the February 2015 purchase order. But the master services agreement states that Burns & McDonnell was to remit payment to "the CONSULTANT," and collective term referring to NDE Global and NDE USA. Gen. Terms & Conditions , ex. A Master Servs. Agr. (ECF No. 1-1, Page ID 17-18). The parties also agreed on a Global Schedule of Rates. Global Sch. of Rates, ex. E to Master Servs. Agr. (ECF No. 1-1, Page ID 19-21). The Global Schedule of Rates listed hourly rates for work performed by NDE in 42 countries. The schedule divided the nations into three geographic groups, each served by a different NDE office. The Americas Office served 10 countries in North America and South America, including the United States. The EMEA Office served 21 countries in Europe, the Middle East, and Asia. The Far East office served 11 countries in East Asia and Australia. Note 3 to the Global Schedule of Rates addressed how NDE would invoice Burns & McDonnell for any specific project and stated as follows: "Unless instructed differently, the NDE office receiving/executing the assignment will be responsible for

---

would serve as the master services agreement manager.

14

invoicing directly." *Id*. The fact then that NDE Global did not bill for services and did not collect for the February 2015 purchase order does not alter the Court's conclusions.

For all of these reasons, the Court concludes that Burns & McDonnell has made a prima facie showing that NDE Global purposefully availed itself of the privilege of acting in Tennessee or causing a consequence in Tennessee. The second of *Southern Machine* factors is easily met here. *S. Mach.*, 401 F.2d at 381. Burns & McDonnell's contractual cause of action arise from NDE Global's activities directed to the state of Tennessee. As the Court has discussed in some detail, this case arises from the alleged negligence of NDE USA in providing technical services in the Western District of Tennessee and NDE Global's obligation under the master services agreement to indemnify Burns & McDonnell for NDE USA's alleged negligence. As for the third *Southern Machine* factor, NDE Global has not argued that the Court's exercise of jurisdiction over it would be unfair or unreasonable. *Id.* The Court need not consider this issue further. Therefore, NDE Global's Motion to Dismiss must be **DENIED**.

## CONCLUSION

Having concluded that personal jurisdiction exists in this forum as to NDE Global, the Motion to Dismiss for Lack of Personal Jurisdiction pursuant to Rule 12(b)(2) is **DENIED**.

**IT IS SO ORDERED.**

s/ S. Thomas Anderson
S. THOMAS ANDERSON
UNITED STATES DISTRICT JUDGE

Date:   July 18, 2017.